# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| FRANK LEHMAN and SARA PIECHOCKI, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Docket No. 1:16-cv-548-NT ) |
| DAVID LOXTERKAMP, M.D., et al., | ) ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

In this medical malpractice suit, Plaintiffs Frank Lehman and Sandra Piechocki allege that the Defendants negligently failed to diagnose or to treat Mr. Lehman's breast cancer in violation of the Federal Tort Claims Act ("**FTCA**") and Maine common law. Second Am. Compl. (ECF No. 32) ("**SAC**"). The Plaintiffs assert only state-law claims against Defendants Jeffrey Sedlack, Waldo County General Hospital, Waldo County Medical Partners Surgical Services, and Waldo County Healthcare (the "**Waldo Defendants**"). Before me is the Waldo Defendants' motion to dismiss the Plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1). Mot. to Dismiss. (ECF No. 40). For the reasons that follow, the motion to dismiss is **DENIED**.

## BACKGROUND

On or around January 9, 2013, Mr. Lehman sought treatment from Defendant David Loxterkamp for a lump in his left breast. SAC ¶ 23. At that time, Dr. Loxterkamp was a Maine licensed physician employed by Defendant Penobscot

Community Health Center d/b/a Seaport Community Health Center ("**Seaport Health**"). SAC ¶ 13.

Dr. Loxterkamp's exam revealed a lesion near Mr. Lehman's areola, and he referred Mr. Lehman to Defendant Jeffrey Sedlack, a general surgeon, for further evaluation. SAC ¶¶ 24-25. On January 14, 2013, Mr. Lehman underwent a mammogram to assess the lesion, after which the radiologist recommended that Mr. Lehman have close clinical surveillance of the mass. SAC ¶ 26. The same day, Dr. Sedlack advised Mr. Lehman to leave the mass alone and to follow up in two months. SAC ¶ 27. Two days later, on January 16, 2013, Mr. Lehman returned to Dr. Loxterkamp for his annual physical and noted the mass in his breast. SAC ¶ 28.

Neither Dr. Sedlack nor Dr. Loxterkamp reached out to Mr. Lehman following that January 16 appointment, and Mr. Lehman did not see either doctor again until July 23, 2014, when he reported to Dr. Loxterkamp complaining of tenderness in the lump in his breast. SAC ¶ 30. In the intervening year and a half—specifically, on July 15, 2013—Seaport Health became a federally-qualified health center, rendering Seaport Health and Dr. Loxterkamp employees of the United States Public Health Service and the United States Department of Health and Human Services. SAC ¶¶ 15-16.

During Mr. Lehman's July 23, 2014, appointment, Dr. Loxterkamp attempted to remove the mass from Mr. Lehman's breast in his office. SAC ¶ 31. After extensive efforts, Dr. Loxterkamp was able to remove only a part of the lesion, which was sent to pathology. SAC ¶ 31. On July 25, 2014, Mr. Lehman returned to Dr. Loxterkamp

to have the dressing on his incision changed and for the pathology results, which revealed an invasive intra-ductal cell adenocarcinoma of intermediate grade, hormone receptor +, and HER 2/neu assay negative. SAC ¶ 32. Dr. Loxterkamp arranged an oncology consultation but encouraged Mr. Lehman to go on a planned vacation before that consult. SAC ¶ 32. On July 28, 2014, Mr. Lehman again reported to Dr. Loxterkamp for an assessment of the incision site, because Mr. Lehman was concerned about the amount of bruising in that area. SAC ¶ 34.

On August 7, 2014, Mr. Lehman saw Dr. Susan O'Connor for his oncology consultation. SAC ¶ 34. Dr. O'Connor found it difficult to determine whether some portion of the mass remained in Mr. Lehman's breast because of significant swelling, bruising, and fluid in and around the incision. SAC ¶ 34. Believing Mr. Lehman had breast cancer, Dr. O'Connor referred Mr. Lehman to the Dana Farber Cancer Institute for a second opinion on that diagnosis. SAC ¶¶ 34, 35. On August 13, 2014, Dr. Laura Dominici confirmed Dr. O'Connor's diagnosis and scheduled Mr. Lehman for surgery to stage and treat the breast carcinoma. SAC ¶ 35.

On August 29, 2014, Mr. Lehman underwent a left modified mastectomy and left sentinel lymph node biopsy. SAC ¶ 36. A sentinel node sent to pathology during the mastectomy was determined to be malignant, necessitating axillary dissection. SAC ¶ 36. On September 3, 2014, lab results reveal that 8 of 25 dissected nodes were involved with metastatic adenocarcinoma. SAC ¶ 37. Because of the advanced stage of the cancer, Mr. Lehman was treated with chemotherapy and radiation followed by

hormonal therapy with Tamoxifen. SAC ¶ 38. Mr. Lehman will continue treatment with Tamoxifen for five to ten years. SAC ¶ 38.

Mr. Lehman and his wife, Plaintiff Sandra Piechocki, claim that Drs. Sedlack and Loxterkamp acted negligently in their treatment of Mr. Lehman by:

(1) failing to follow the radiologist's January 14, 2013 recommendation to maintain close clinical surveillance over Mr. Lehman's breast mass;

(2) failing to biopsy the breast mass in 2013;

(3) failing to timely diagnose, treat, or refer Mr. Lehman for breast cancer; and

(4) as to Mr. Loxterkamp and his employers, attempting to perform a surgical procedure in an office setting instead of referring Mr. Lehman to a surgeon, failing to re-image Mr. Lehman's breast, and failing to recognize the possibility of malignancy.

SAC ¶ 39.

Based on this allegedly negligent conduct, the Plaintiffs filed suit in this court asserting state-law negligence and loss of consortium claims against Drs. Sedlack and Loxterkamp and their respective employers, and an FTCA claim against the United States for conduct undertaken by Dr. Loxterkamp and Seaport Health after July 15, 2013. SAC ¶¶ 45-55.

On December 18, 2018, the Waldo Defendants filed the instant motion to dismiss. Mot. to Dismiss. The United States, Dr. Loxterkamp, and Seaport Health (the "**Federal Defendants**") have taken no position on the Waldo Defendants' motion other than to ask that if I decide to grant the motion, I also stay this action pending the resolution of any state-court proceedings on the Plaintiffs' claims. United States' Resp. 2 (ECF No. 50).

## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of showing that the court has subject matter jurisdiction. *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996). In evaluating the plaintiff's showing, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Id.* at 1210. The court may also consider extra-pleading material submitted by the parties on the issue of jurisdiction. *Id.*

## DISCUSSION

The Waldo Defendants ask me to utilize my discretion to decline supplemental jurisdiction over the Plaintiff's state-law claims against them because those claims substantially predominate over the Plaintiffs' FTCA claim.[1] I am not persuaded.

Pursuant to the federal subject matter jurisdiction statute, 28 U.S.C. § 1367, Federal courts may exercise supplemental jurisdiction over all claims "that are so related to claims in the action [over which the court has] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).[2] A district court may also "decline to exercise supplemental jurisdiction over a claim" if, among other

---

[1] In their opening brief, the Waldo Defendants also argued that if I retained the claims against them I would create an irreconcilable conflict implicating the Waldo Defendants' right to a jury trial. However, the Waldo Defendants dropped this argument in their Reply, conceding that the purported conflict would exist regardless of the forum in which the claims against them were heard. Because I consider the argument withdrawn, I do not address it here.

[2] The Waldo Defendants acknowledge that I have original jurisdiction over the Plaintiffs' FTCA claim. Mot. to Dismiss 3. The Waldo Defendants also do not dispute that the Plaintiffs' state-law claims are so related to the FTCA claim as to form part of the same case or controversy. Mot. to Dismiss 4.

5

reasons, "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). "Section 1367(c) codifies the holding of *United Mine Workers of America v. Gibbs*, [383 U.S. 715 (1966)], where the Supreme Court clarified that a district court may dismiss state claims 'if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'" *Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 73-74 (1st Cir. 2013) (quoting *Gibbs*, 383 U.S. at 726).

None of these markers exist here. The Plaintiff's primary theory of harm is that the Defendants' conduct caused Mr. Lehman's cancer to progress to a stage it would not have reached absent their alleged negligence. For the Plaintiffs to prove up this theory and for a jury to apportion fault among the Defendants, the parties will need to present evidence regarding both doctors' actions and those actions' impact across the entire period alleged in the Complaint. Therefore, although the Plaintiffs' FTCA claim seeks to hold the United States liable only for any harm caused by Dr. Loxterkamp after July 15, 2013, the proof necessary on the Plaintiffs' federal and state claims substantially overlaps. *See Allstate Interiors & Exteriors, Inc.*, 730 F.3d at 74 (state-law claims did not substantially predominate where federal and state claims "depended on the same body of evidence"); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (where "presentation at trial of the original and supplemental claims will overlap substantially, . . . supplemental jurisdiction usually will realize economy and efficiency"). While the state and federal claims raise some

6

disparate issues—for example, whether Dr. Loxterkamp acted negligently in his attempt to remove Mr. Lehman's tumor in a nonsurgical setting—the additional state-law issues do not overwhelm the federal ones. And the Waldo Defendants make no argument that the remedy available to the Plaintiffs at state law is more comprehensive than they might obtain under the FTCA. *Allstate Interiors & Exteriors, Inc.*, 730 F.3d at 74 (although state-law claims "involved a greater monetary claim than [plaintiff's] remaining" federal dispute, state-law claims did not substantially predominate where both sets of claims "sought a similar legal remedy in the form of contractual damages"). *Cf. Town of Jaffrey v. Town of Fitzwilliam*, 846 F. Supp. 3, 5 (D.N.H. 1994) (state-law claims substantially predominated in part because federal damages were "limited to recovery of response costs . . . while under state law theories plaintiff may be entitled to full compensatory damages and enhanced damages").

The Waldo Defendants insist that the overlap between the Plaintiffs' state and federal claims runs in their favor because a ruling on the state-law claims would almost entirely resolve the Plaintiffs' FTCA claim. As the Plaintiffs and the Federal Defendants note, however, there remains some likelihood that this case would not be mooted by a state-court judgment and that I would need to decide the Plaintiff's federal claim using the same evidence heard by the state court. Rather than invite that duplication of efforts, I will exercise my discretion to retain the Plaintiff's state-law claims. *Allstate Interiors & Exteriors, Inc.*, 730 F.3d at 74 ("[W]hile section 1367(c)

7

provides that a district court 'may decline to exercise supplemental jurisdiction' under certain circumstances, it does not obligate a district court to do so.").

## **CONCLUSION**

For the reasons stated above, the Court **DENIES** the Waldo Defendants' motion to dismiss.

SO ORDERED.

/s/ Nancy Torresen<br>
United States District Judge

Dated this 29th day of March, 2019.